OPINION
{¶ 1} Plaintiff-appellant, John Mark Foley, Jr. ("appellant"), appeals from the August 24, 2004 judgment entry and decree of divorce in Foley v. Foley, 10th Dist. No. 05AP-242 and the August 23, 2005 finding of contempt in Foley v.Foley, 10th Dist. No. 05AP-463 both entered by the Franklin County Court of Common Pleas, Division of Domestic Relations. The two cases were consolidated for purposes of appeal. For the reasons that follow, we reverse and vacate the judgments of the trial court.
 {¶ 2} A review of the record reveals that appellant and defendant-appellee, Carole Mavis Foley ("appellee"), were married on September 15, 1975, in Richmond, Virginia. There were no issue born to the marriage. The parties resided together until 1998 when appellant moved out of the marital residence. Appellant voluntarily supported appellee and paid all the obligations and debts of appellee from the time of the separation through the filing of the divorce complaint. On December 5, 2001, appellant filed for divorce, and was represented by attorney Walter Reckless ("Reckless"). Frederick Meister ("Meister"), entered his appearance as co-counsel for appellant on July 25, 2002. Appellee additionally filed a counterclaim for divorce on January 7, 2002.
 {¶ 3} During 2003, the parties conducted discovery and attempted settlement negotiations. The parties were unsuccessful in their attempts at mediation and two and one-half years after the filing of the divorce complaint the matter was set for trial on July 20, 2004. Notices regarding the July 20, 2004 trial date were sent to the parties and all attorneys of record, including both Reckless and Meister. The court began the trial on July 20, 2004 and heard additional testimony on July 22 and 23, 2004. Appellant was represented at this time by Meister. During this part of the trial, appellee elicited testimony attempting to link appellant to a company called Arete/NEOLITH so that appellee could pursue further discovery with respect to that company. According to the trial transcript, the trial was scheduled to reconvene on July 26, 2004. However, for a reason that is unclear from the record, the trial did not reconvene on that date and the trial court requested that the attorneys schedule a new date to continue the trial. Because the attorneys did not, the trial court rescheduled the trial to reconvene on Monday, September 27, 2004. No notices were sent to the parties or the attorneys of record regarding the September 27, 2004 trial date, however, the trial court bailiff contacted the attorneys before September 27, 2004 to remind them of the trial date.[1]
 {¶ 4} On Friday, September 24, 2004, Meister filed a motion to withdraw as counsel. The memorandum in support of the motion set forth that "Since Mr. Foley has terminated the services of Mr. Meister, it is necessary for Mr. Meister to formally withdraw as counsel for Mr. Foley in the above referenced matter."
 {¶ 5} The trial court reconvened the trial on September 27, 2004. Neither Meister nor Reckless appeared at the trial on behalf of appellant. Appellant did appear and inquired to the trial court regarding a continuance motion that he believed Meister had made simultaneously with his motion to withdraw as counsel for appellant.[2] In response to his inquiry, appellant was informed that Meister had telephoned the trial court regarding a continuance on September 24, 2004, the same date the motion to withdraw was filed, and was instructed to tell appellant that the trial was to go forward on September 27, 2004 as scheduled. The trial court told appellant that since Meister did not request a continuance, appellant needed to make a request for a continuance.
 {¶ 6} Appellant stated to the trial court that Meister had asked him on both August 30 and September 17, 2004 to "excuse" him as his counsel. Appellant stated that on September 16 or 17, Meister advised appellant for the first time that the trial was scheduled to reconvene on September 27, 2004, and again requested that appellant obtain new counsel. According to appellant, he had met with a new attorney who was ready to take the case provided that the case was continued. The trial court proceeded to hear testimony despite appellant's oral request for a continuance.
 {¶ 7} On September 28, 2004, appellant objected to the case proceeding because of the fact that Meister had just withdrawn and appellant had not had an opportunity to prepare. The trial court noted his objection and proceeded with the trial. On September 29, 2004, the trial court journalized its entry granting Meister's motion to withdraw as counsel for appellant. The trial court heard testimony on September 30, 2004, as well as on October 4, 5, and 7, 2004. From September 27 until October 4, the trial court heard testimony regarding outstanding motions, including appellant's Civ.R. 75 motion and appellee's contempt motion against appellant.
 {¶ 8} The trial did not reconvene again until Friday, October 12, 2004. Appellant filed a motion form for a continuance on October 12, noting that the reason for the request was "To Obtain Counsel." The trial court denied the written request for a continuance on October 14, 2004, and listed as its reason that the "court is in trial in this case and for reasons on record already." The trial court heard testimony on the merits of the case on October 12, 18, 19, 20, 26, and November 4, 2004. The trial court therefore heard testimony on 15 different days.
 {¶ 9} The trial court issued its judgment entry and decree of divorce on February 11, 2005. Therein, the trial court issued a written decision on appellant's motions for continuances. The trial court explained that it denied appellant's motions for various reasons, including the fact that counsel for appellant and appellee had the opportunity to chose the court date for the trial but failed to do so, that the trial court had advised counsel several weeks in advance of the date chosen by the trial court for the trial, that Meister had contacted the court on September 24, 2004 regarding a continuance but the court directed its staff to tell Meister to tell appellant that the trial would go forward on September 27, 2004, the case was nearly three years old, and the trial had already begun. The trial court went on to note that had appellant been dissatisfied with Meister's services, he should have terminated Meister earlier in July,[3] that numerous continuances requested had already been granted previously, that appellee objected to appellant's motion for a continuance because it was a hardship for appellee to continue without final resolution of the divorce, and that Reckless had never withdrawn as counsel.
 {¶ 10} Appellant timely appealed from the judgment entry and decree of divorce. Subsequent to appellant's notice of appeal, appellee moved the trial court to hold appellant in contempt and to recover attorneys' fees for failure to pay spousal support arising from the judgment entry and divorce decree. In a bench trial held on May 4, 2005, the trial court found appellant in contempt for failure to provide spousal support pursuant to the judgment entry and decree of divorce that resulted in an arrearage of spousal support owed to appellee. The trial court awarded attorneys' fees to appellee for bringing the contempt action, and sentenced appellant to 30-days in jail, but suspended the sentence provided that appellant liquidate the arrearage in spousal support with monthly payments, and pay appellee's attorneys' fees. Appellant appealed the finding of contempt on May 11, 2005, however, the trial court did not journalize the finding of contempt until August 23, 2005.[4]
 {¶ 11} Appellant has asserted the following assignments of error in his consolidated appeal:
1. THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION WHEN (1) THE COURT GRANTED A REQUEST TO WITHDRAW FILED BY PLAINTIFF-APPELLANT'S COUNSEL ON SEPTEMBER 24, 2004 BY ENTRY JOURNALIZED WITH THE COURT ON SEPTEMBER 29, 2004, AND (2) SUBSEQUENTLY DENIED A CONTINUANCE REQUESTED BY THE PLAINTIFF-APPELLANT ON SEPTEMBER 24, 2004 AND AGAIN ON SEPTEMBER 27, 2005.
2. THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN THE COURT'S AWARD OF SPOUSAL SUPPORT TO THE DEFENDANT-APPELLEE AS IT (1) FAILED TO PROPERLY CONSIDER ALL OF THE FACTORS AS REQUIRED BY O.R.C. 3105.18(C)(1); (2) IMPROPERLY IMPUTED INCOME OF $105, 000.00 TO THE PLAINTIFF-APPELLANT WITHOUT SUFFICIENT EVIDENCE TO SUPPORT SUCH AN IMPUTED FIGURE, AND (3) ORDERED THAT THE PLAINTIFF-APPELLANT PAY $4,500.00 PER MONTH FOR SPOUSAL SUPPORT TO THE DEFENDANT-APPELLEE, WHICH IS OVER 50% OF THE PLAINTIFF'S MONTHLY DISPOSABLE INCOME, EVEN IF THE PLAINTIFF-APPELLANT COULD EARN THE IMPUTED FIGURE OF $105,000 ANNUALLY.
3. THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION WHEN THE COURT FOUND THAT THE PLAINTIFF-APPELLANT COULD HAVE" BORROWED" FUNDS FROM HIS RELATIVES TO PURCHASE THE ASSETS OF NOVATEC, OR COULD HAVE "ASKED . . . TO RELEASE RESTRAINED ASSETS" TO, PRESUMABLY, PREVENT THE LOS OF INCOME TO THE PLAINTIFF-APPELLANT.
4. THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION WHEN IT FAILED TO PROPERLY CONSIDER ALL OF THE RELEVANT FACTORS AND PROVISIONS OF O.R.C. 3105.171 WHEN IT DIVIDED THE PARTIES' PROPERTY IN AN INEQUITABLE MANNER.
5. THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION, AND RULED AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE, WHEN IT FOUND (1) THAT THE APPRAISED FAIR MARKET VALUE OF THE MARITAL RESIDENCE WAS $240,000, AS OPPOSED TO $210,000, AND (2) ATTRIBUTED THE LOSS OF EQUITY IN THE HOME OF $30,000.00 TO PLAINTIFF-APPELLANT WITHOUT EVIDENCE TO SUPPORT SUCH A FINDING.
6. THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION WHEN IT FOUND THAT $35,000.00 OF DEFENDANT-APPELLEE'S ATTORNEY FEES WERE INCURRED IN PROSECUTION OF HER CONTEMPT ACTIONS AGAINST THE PLAINTIFF-APPELLANT AND ORDERED THE PLAINTIFF-APPELLANT TO PAY SAID AMOUNT TO DEFENDANT-APPELLE FROM THE MARITAL ASSETS OF THE PARTIES.
7. THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION, AND RULED AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE, WHEN IT FOUND THE PLAINTIFF-APPELLANT IN CONTEMPT, ON OR ABOUT MAY 4, 2005, FOR NON-PAYMENT OF SPOUSAL SUPPORT WHEN THE EVIDENCE SUPPORTED A FINDING THAT THE PLAINTIFF-APPELLANT HAD AN INABILITY TO PAY THE SUPPORT OBLIGATION.
8. IN THE EVENT THAT THIS COURT FINDS THAT THE TRIAL COURT PROPERLY FOUND THE PLAINTIFF-APPELLANT IN CONTEMPT FOR THE NON-PAYMENT OF PLAINTIFF-APPELLANT'S SPOUSAL SUPPORT OBLIGATION, THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION WHEN IT ORDERED THAT THE PLAINTIFF-APPELLANT PURGE HIMSELF OF THE CONTEMPT IN A TIME PERIOD AND MANNER THAT IS PUNITIVE IN NATURE, EXCESSIVE, AND IMPOSSIBLE TO SATISFY.
9. THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION WHEN IT FOUND THAT THE PLAINTIFF-APPELLEE AGREED THAT NO MEDICAL EXPERT WAS NEEDED TO TESTIFY TO CONFIRM THE DEFENDANT-APPELLEE'S TOTAL DISABILITY AND SUBSEQUENTLY FOUND, FOR THE PURPOSES OF A SPOUSAL SUPPORT AWARD, THAT THE DEFENDANT-APPELLEE WAS TOTALLY DISABLED WITHOUT SUFFICIENT EVIDENCE TO SUPPORT THE SAME.
 {¶ 12} We begin with appellant's first assignment of error.
 {¶ 13} Appellant asserts that the trial court abused its discretion when it granted Meister's request to withdraw as counsel for appellant and/or denied appellant's motion for a continuance on the fourth day of a 15-day trial. According to appellant, based upon his attorney's withdrawal, the trial court erred by failing to allow appellant sufficient time to seek new counsel when it granted Meister's motion to withdraw on September 24, 2004, and journalized the withdrawal on September 29, 2004, but denied appellant's own motion for a continuance when the trial reconvened on September 27, 2004. Appellant asserts that in allowing Meister to withdraw immediately prior to the trial reconvening and forcing appellant to proceed pro se for the remainder of the 12-day trial, unfairly prejudiced appellant and, thus, the trial court abused its discretion.
 {¶ 14} According to appellee, the trial court did not abuse its discretion since appellant terminated his attorney a week prior to the scheduled date for the trial to reconvene and appellant still had Reckless as a counsel of record. Appellee also asserts that the trial court was required to grant Meister's motion to withdraw pursuant to DR 2-110(B) of the Code of Professional Responsibility because Meister had been terminated by appellant. Additionally, appellee submits that since the case had been filed in 2001 and had been continued at least nine times, as well as the fact that she was not receiving any spousal support, that a hardship would have existed for her, and the case would have been continued again. Appellee further argues that appellant was represented on the September 27, 2004 trial date by Reckless. Because of these factors, appellee asserts that the trial court did not abuse its discretion in permitting Meister to withdraw as counsel and denying appellant's motion for a continuance.
 {¶ 15} We begin by recognizing that the decision to grant or deny a continuance lies within the sound discretion of the trial court. State v. Unger (1981), 67 Ohio St.2d 65, 67,423 N.E.2d 1078. Thus, the decision of a trial court regarding a motion for a continuance will not be reversed on appeal unless the trial court has abused its discretion. Fiocca v. Fiocca, 10th
Dist. No. 04AP-962, 2005-Ohio-2199 at ¶ 6. "The term `abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 218, 450 N.E.2d 1140, 1142. In determining whether a trial court has abused its discretion, a court of appeals may not substitute its judgment for that of the trial court. Id.
 {¶ 16} Our review of a denial of a motion for a continuance requires us to "apply a balancing test, thereby weighing the trial court's interest in controlling its own docket, including the efficient dispensation of justice, versus the potential prejudice to the moving party." Fiocca, supra, citing Unger
at 67. In deciding a motion for a continuance, a court should note, among other relevant considerations:
[T]the length of the delay requested; whether other continuances have been requested and received; the inconveniences to litigants, witnesses, opposing counsel and the court; whether the requested delay is for legitimate reasons or whether it is dilatory, purposeful, or contrived; whether the defendant contributed to the circumstances which give rise to the request for a continuance; and other relevant factors, depending on the unique facts of each case.
Unger, at 67.
 {¶ 17} Some courts of appeal have found an abuse of discretion "where the trial court has refused to grant a continuance in order for a party to obtain a new counsel and the party's counsel has withdrawn on or near the day of trial" Lowev. Lowe (Dec. 23, 1985), 2nd Dist. No. 9544; see, also,Seget v. Seget, 8th Dist. No. 83905, 2004-Ohio-6209. Nevertheless, "other courts have found no abuse of discretion in similar circumstances where the party moving for a continuance was still represented by counsel." Lowe, supra, citing Scheuv. Scheu (1945), 77 Ohio App. 510, 512 (no abuse of discretion for a trial court to proceed to trial when an attorney fails to appear).
 {¶ 18} In applying the balancing test for a review of denial of a motion for a continuance, we will first consider the factors articulated in Unger. Beginning with the length of delay requested, we note that neither did appellant specifically request a certain amount of time, nor did the trial court inquire as to the length of time for a continuance required by appellant. However, appellant did indicate that he met with new counsel on September 20, 2004, and that the new counsel indicated he was willing to take the case provided that appellant obtain a continuance from the trial court.
 {¶ 19} Next, we must consider the number and type of continuances that were previously requested in the case. The record reveals that the case was continued four times before the September 27, 2004 hearing. The record additionally indicates a notice of bankruptcy of appellant and suggestion of stay.[5] Of these continuances, eight were jointly requested by the parties, two were solely requested by appellant, one was requested solely by appellee, and three continuances listed the trial court as the requestor. One continuance form left the space available for the requesting party blank. All 15 continuances were approved by both parties. Based upon this review, appellant cannot reasonably be viewed as exclusively contributing to delay in the trial because of the number of continuances granted.
 {¶ 20} The next Unger factor we will consider is the inconvenience relative to the parties, witnesses, opposing counsel, and the trial court. According to appellee, it was necessary that the trial go forward so that the divorce was resolved expeditiously because she was physically disabled and only receiving minimal support. Additionally, appellee asserted that her counsel was prepared to go to trial and she had bore the expenses for her counsel's trial preparation. However, a review of the record appears that in all other respects, the parties, witnesses, and opposing counsel would not have been particularly inconvenienced had a continuance been granted. The appellee and appellee's counsel were able to appear regularly throughout September and October 2004. Additionally, there were no witnesses subpoenaed for a particular day that would not have been able to have been re-scheduled for a different day.
 {¶ 21} Next, we shall consider both whether the request was interposed for dilatory purposes or whether appellant contributed to the circumstances that gave rise to the need for a continuance. The memorandum in support of withdrawal indicated that appellant had terminated Meister. However, on the morning of the trial on September 27, 2004, appellant stated that Meister had first requested that appellant "excuse" him as his attorney on August 30, 2004. Appellant stated that he began seeking a new attorney, but was not able to meet with a new attorney until September 20, 2004. Appellant stated that on September 17, 2004, Meister again requested that appellant "excuse" him from the case, and told appellant for the first time that there was a trial date on September 27, 2004. The trial court in its entry indicated that it believed that appellant had in fact terminated Meister. Based on this review, the record is unclear on precisely why Meister withdrew. Because Meister withdrew on the last business day before the trial was scheduled to reconvene, it was virtually impossible for appellant to retain other counsel prior to the trial date. Seget, supra, at ¶ 74. We therefore must conclude, based on the record before us, that appellant's request was not interposed for dilatory purposes.
 {¶ 22} Regardless of whether appellant had terminated Meister or merely given Meister permission to withdraw, the local rules of the trial court govern the withdrawal of counsel. See Seget,
supra, at ¶ 50. Loc.R. 3(H)[6] of the Franklin County Court of Common Pleas, Division of Domestic Relations states in relevant part:
No attorney shall be permitted to withdraw from a case later than 20 days prior to [sic] hearing except for extraordinary circumstances.
 {¶ 23} The record clearly indicates that Meister filed his motion for withdrawal on Friday, September 24, 2004, filing it the last business day before the trial was scheduled to reconvene. In the entry granting Meister's motion to withdraw, the trial court stated "[f]or good cause shown, counsel for Plaintiff is granted leave to withdraw."
 {¶ 24} This court has previously determined that it can constitute error for a trial court to permit an attorney to withdraw if the request is made within the time period prohibited by the local rule and the effect of the withdrawal is to leave a party without representation. Hall v. Solid Corp. (Dec. 3, 1985), 10th Dist. No. 85AP-576; see, also, Peltier v.Condo-Mobile, Inc. (Apr. 25, 1978), 10th Dist. No. 77AP-746. Based on this review, therefore, we note for purposes of our consideration under Unger, that the trial court granted Meister's withdrawal within the time period contemplated by Loc.R. 3(H) but denied appellant's request for a continuance in order allow new counsel to represent him, which had the effect of requiring appellant to proceed pro se, without further considering the propriety of the withdrawal.
 {¶ 25} Finally, Unger requires us to consider other relevant factors depending on the unique circumstances of the case. We note that the trial court based its decision on appellant's request for a continuance in part on the determination that appellant was represented by Reckless. However, a careful review of the facts surrounding Reckless' representation is illuminating. The record reveals that mail notices for the July 20, 2004 trial date were sent to the parties, all attorneys of record, including Meister, Reckless, appellee's counsel, as well as interested non-parties and associated attorneys for non-parties. However, no notices were sent by mail regarding the September 27, 2004 trial date. Although the trial court bailiff contacted the attorneys by telephone prior to the September 27, 2004 trial date, the record is unclear whether the bailiff only contacted Meister, or contacted both Meister and Reckless. Additionally, the record is devoid of any attempts by the trial court to contact Reckless before reconvening the trial on the morning of September 27, 2004.
 {¶ 26} Based on these facts, we therefore distinguish the case at bar from Scheu, supra. In Scheu, the court of appeals determined that it was not an abuse of discretion for a trial court to deny a continuance when an attorney had notice of the date for trial, but did not appear at the trial. Scheu, at 512. In the instant case, there is no definitive evidence indicating that Reckless had notice of the September 27, 2004 trial date. Consequently, we must conclude that it was prejudicial for the trial court to require appellant to proceed pro se, notwithstanding the fact that Reckless remained counsel of record.
 {¶ 27} Based on the above reasoning, and in weighing the factors espoused in Unger, supra, we conclude that the danger of potential prejudice to the moving party, which in this case was appellant, was greater than the trial court's need to control its own docket. Fiocca, supra, at ¶ 7. Therefore, under the facts of this case, we determine that the denial by the trial court of appellant's request for a continuance was unreasonable, and therefore the trial court abused its discretion. Unger,
supra, at 67. We therefore sustain appellant's first assignment of error.
 {¶ 28} In light of the disposition of the appellant's first assignment of error, appellant's second, third, fourth, fifth, sixth, and ninth assignments of error arising from the judgment entry and decree of divorce and appealed in case number 05AP-242 are moot and we decline to address them. We therefore reverse the judgment of the trial court in case number 05AP-242.
 {¶ 29} We next turn to appellant's seventh and eighth assignments of error, wherein appellant challenges the trial court's August 23, 2005 finding of contempt against appellant for failure to comply with the judgment entry and decree of divorce regarding spousal support and arrearages in spousal support.
 {¶ 30} In appellant's seventh assignment of error, appellant asserts that the trial court abused its discretion and ruled against the manifest weight of the evidence. According to appellant, the evidence supported a finding that appellant did not have the ability to pay the spousal support obligation. In appellant's eighth assignment of error, appellant asserts that the trial court abused its discretion by ordering appellant to pay both the monthly spousal support due under the divorce decree, as well as a monthly payment for the arrearage in spousal support until the arrearage was liquidated. Appellant submits that the order of the trial court was punitive, excessive, and impossible to satisfy.
 {¶ 31} In response to appellant, appellee asserts the trial court did not abuse its discretion by finding appellant in contempt. According to appellee, appellant failed to present any testimony or evidence necessary to satisfy his burden of proof that appellant was unable to pay the spousal support as required by the divorce decree, as well as the arrearage in the spousal support. Appellee asserts that the trial court properly considered the evidence and testimony presented to support its finding of contempt. Additionally, appellee asserts that the trial court did not abuse its discretion in its conditions to purge the contempt because the trial court found that it was within appellant's ability to pay the spousal support.
 {¶ 32} We initially note that contempt can be characterized as either civil or criminal based upon the intended purpose of the punishment. The Supreme Court of Ohio has distinguished civil and criminal contempt by stating:
Civil contempt sanctions are designed for remedial or coercive purposes and are often employed to compel obedience to a court order. [Shillitani v. United States (1966), 384 U.S. 364, 370,86 S.Ct. 1531, 1535, 16 L.Ed.2d 622, 627.] Criminal contempt sanctions, however, are punitive in nature and are designed to vindicate the authority of the court. Denovchek v. Trumbull Cty.Bd. of Commrs., (1988), 36 Ohio St.3d 14, 15, 520 N.E.2d 1362,1363. Thus, civil contempts are characterized as violations against the party whose benefit the order was made, whereas criminal contempts are most often described as offenses against the dignity or process of the court. State v. Kilbane (1980),61 Ohio St.2d 201, 204-205, 15 O.O.3d 221, 223, 400 N.E.2d 386, 390.
State ex. rel. Corn v. Russo, 90 Ohio St.3d 551, 555,740 N.E.2d 265, 269.
 {¶ 33} Additionally, contempt can be characterized as either direct or indirect. Direct contempt occurs in the presence of a court in the performance of its judicial function. R.C. 2705.01;Byron v. Byron, 10th Dist. No. 03AP-819, 2004-Ohio-2143, at ¶ 12. However, indirect contempt occurs outside of the presence of a court and "demonstrates a lack of respect for the court and its lawful orders." Id.
 {¶ 34} Typically, contempt proceedings in domestic relations matters are indirect, civil contempt because the punishment is intended to coerce or encourage future compliance with the orders of the court, and the behavior occurs outside the presence of the court. See id., see, also, Turner v. Turner (May 18, 1999), 10th Dist. No. 98AP-999. In the case at bar, the August 23, 2005 judgment of the trial court finding appellant in contempt was indirect and civil in nature because it occurred outside of the presence of the trial court and the punishment was intended to coerce or encourage appellant to comply with the decree of divorce.
 {¶ 35} In order for a contempt action to exist, the contempt action must be based upon a valid underlying order or judgment of a court. Everly v. Shuster (Apr. 27, 1999), 7th Dist. No. 237, citing Arthur Young Co. v. Kelly (1990),68 Ohio App.3d 287, 588 N.E.2d 233. Similarly, depending on the circumstances of a case, a finding of civil contempt may not survive if the underlying judgment or order is reversed. See Annotation, Reversal, Modification, Dismissal, Dissolution, or Resettlement of Injunction Order or Judgment as Affecting Prior Disobedience as Contempt (1944), 148 A.L.R. 1024, 1032: see, also, Slone v.Slone (Mar. 31, 1998), 4th Dist. No. 96CA586. In civil contempt cases where the underlying order or judgment is reversed, the purpose of the punishment may be frustrated because the punishment can no longer operate as to coerce or encourage the contemnor to obey the prior order of the court. In contrast, the purpose of a punishment for criminal contempt would not be frustrated if the underlying order of judgment of a trial court were reversed because the punishment is intended to vindicate the authority of the trial court and punish the contemnor.
 {¶ 36} In the case at bar, we have sustained appellant's first assignment of error and reversed the judgment entry and decree of divorce in case number 05AP-242, and are remanding the case to the trial court for a new trial. Consequently, our reversal has the effect of putting the case in a posture where no final judgment has been entered on the claim of either party.Wilson v. Kreusch (1996), 111 Ohio App.3d 47, 52,675 N.E.2d 571, 573; see, generally, Miller v. Miller (1960),114 Ohio App. 234, 238, 19 O.O.2d 108, 181 N.E.2d 282, 285. Since the August 23, 2005 finding of contempt by the trial court was based on the failure by appellant to comply with the divorce decree with respect to the payment of spousal support, and the amount of spousal support in the divorce decree was in turn based upon evidence and testimony introduced during the original trial, the purpose of the punishment for the civil contempt can no longer be satisfied because the determinations by the trial court with respect to the amount of spousal support may change upon the further litigation of the case on remand.
 {¶ 37} We nevertheless emphasize that, unless an order of a trial is void, the order of a trial court must be obeyed unless and until it is set aside by orderly and proper proceedings.Arthur Young Co., supra, at 295. (Citations omitted.) However, under the circumstances of this case, because the underlying judgment of the trial court in case No. 05AP-242 is reversed and remanded for a new trial, we vacate the trial court's finding of contempt in case No. 05AP-463. Accordingly, appellant's seventh and eighth assignments of error are moot.
 {¶ 38} Having reversed the judgment of the trial court in case No. 05AP-242 and having vacated the judgment of the trial court in case No. 05AP-463, this matter is remanded to the Franklin County Court of Common Pleas, Division of Domestic Relations, in case No. 05AP-242 for a new trial consistent with the opinion of this court.
Case No. 05AP-242 judgment reversed and remanded for newtrial;
 Case No. 05AP-463 judgment vacated.
McGrath and Travis, JJ., concur.
[1] The record does not disclose which attorneys were contacted by the trial court bailiff.
[2] The record fails to indicate any documentation regarding a simultaneous motion made by Meister seeking a continuance because of his motion to withdraw as counsel.
[3] The record fails to indicate the trial court's basis upon which it believed that appellant was dissatisfied with Meister's services.
[4] The appeal of the finding of contempt is treated as if it were immediately filed upon the entry of the trial court on August 23, 2005. See App.R. 4(C).
[5] The record does not reveal whether an entry was formally entered staying the case due to appellant's bankruptcy. However, two continuances reference the bankruptcy as the reason for which the continuances were requested. Testimony at the trial indicated that the parties agreed for this case to go forward irrespective of the bankruptcy with the exception of disposition on real property. The bankruptcy was later discharged before the trial court issued its judgment entry and decree of divorce.
[6] So as it is in the original.